IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
OXFORD DIVISION

**JEREMY STONE**                                                                  **PLAINTIFF**

**v.**                          **CIVIL ACTION NO.:** 3:23cv010-MPM-JMV

**AMERICAN SERVICES, LLC**                                **DEFENDANT**

**COMPLAINT**
**JURY TRIAL DEMANDED**

**COMES NOW** Plaintiff, Jeremy Stone, by and through counsel, Watson & Norris, PLLC, and files this action to recover damages against Defendant, American Services, LLC, for violations of his rights under Title VII of the Civil Rights Act of 1964, as amended. As more specifically set forth below, Plaintiff has been subjected to unlawful retaliation and sex discrimination. In support of this cause, the Plaintiff would show unto the Court the following facts to-wit:

**THE PARTIES**

1. Plaintiff, Jeremy Stone, is an adult male citizen of DeSoto County, Mississippi.

2. Defendant, American Services, LLC, is a Mississippi limited liability corporation that may be served with process by serving its registered agent: James E. Holland, 3010 Goodman Road West, Suite A, Horn Lake, Mississippi 38637.

**JURISDICTION AND VENUE**

3. This Court has federal question jurisdiction and venue is proper in this Court.

4. This action arises under Title VII, 42 U.S.C. § 2000e, *et seq.*, as amended.

5. On May 6, 2022, Plaintiff timely filed a Charge of Discrimination with the

EEOC, a true and correct copy of which is attached as Exhibit "A." On November 29, 2022, the EEOC issued a Dismissal and Notice of Right to Sue, a true and correct copy of which is attached as Exhibit "B." Plaintiff timely files this cause of action within ninety (90) days of receipt of his Dismissal and Notice of Right to Sue.

## STATEMENT OF FACTS

6. Plaintiff is a 31-year-old gay male resident of DeSoto County and Southaven, Mississippi.

7. Plaintiff was hired on November 1, 2021, as a Project Manager at American Services, LLC (AS).

8. It was well known to the management and staff of AS that Plaintiff is gay.

9. In fact, Plaintiff's romantic partner, Jacob Jones (male), was also employed at AS while Plaintiff was.

10. On March 28, 2022, Plaintiff was moved to the position of CDL Driver.

11. On March 30, 2022, an incident occurred in which Plaintiff was maneuvering a truck at a customer's (Pennakem's) worksite and accidentally caused a piece of equipment in the back of the truck to collide with some overhead piping.

12. Later that same day (March 30, 2022), AS owner Kendall Prewett telephoned Plaintiff from Supervisor John Barrett's phone.

13. Mr. Prewett had been drinking alcohol and began screaming at Plaintiff.

14. Mr. Prewett stated to Plaintiff, "If you ever set foot in this office again, I will strangle you to death!" and he repeatedly referred to Plaintiff as a "worthless faggot".

15. Plaintiff could tell that Mr. Barrett was present with Mr. Prewett and witnessed him making these statements over the phone to Plaintiff.

16. The call came from Mr. Barrett's phone.

17. On March 31, 2022, Sales Representative Ricky Delashmet phoned Plaintiff.

18. Plaintiff apologized for the Pennakem accident.

19. In response, Mr. Delashmet stated, "I know you didn't do it on purpose, Bubba, I know you didn't. I'm glad you're okay and nobody got hurt…".

20. Plaintiff then inquired as to whether he still had a job with AS.

21. Mr. Delashmet stated that he was not sure and that they needed to address the matter with Mr. Barrett.

22. Mr. Delashmet then stated, "And John [Barrett] did try to call you this morning, I think, to apologize. Dude, fucking Kendall grabbed that phone, he [Barrett] said, he said, 'I wasn't happy either', he said, 'I was fucking pissed'.

23. Mr. Delashment's implication was that Mr. Barrett was not happy about how Mr. Prewett spoke to Plaintiff on the phone.

24. Mr. Delashmet again reiterated that "accidents fucking happen, dude", implying that he understood the incident was not deliberate and that he (Mr. Delashmet) did not hold Plaintiff responsible for it.

25. During this same conversation, while referring to what Mr. Prewett had said to Plaintiff on the phone on March 30, 2022, Mr. Delashmet agreed that Mr. Prewett had been very harsh and inappropriate with Plaintiff.

26. Mr. Delashmet stated to Plaintiff, "That was crazy! That was crazy talk!"

27. On April 4, 2022, Sales Representative Ricky Delashmet texted Plaintiff and alleged that he (Mr. Stone) was not terminated.

28. On that same day, April 4, 2022, Mr. Barrett and Mr. Delashmet then telephoned Plaintiff.

29. During that phone call, in reference to Mr. Prewett, Mr. Delashmet stated to Plaintiff, "I think a lot of it was, he [Prewett] was drinking and pissed, but you are not fired, so if you want to come back, what we can do is basically keep you in a truck and keep you away from him [Prewett]…".

30. Plaintiff then stated to Mr. Barrett, "John, you heard it, I know you were there because he [Prewett] took your phone. The man threated to kill me several times in multiple different ways and said if I ever see you in my office again, I'm going to strangle you, you fucking faggot! What am I supposed to do with that?"

31. In response, Mr. Barrett stated, "I understand exactly where you are coming from but the next day when he [Prewett] thought about it, he said, 'I fucked up and I need to tell him [Stone], to apologize to him [Stone].'

32. It is noteworthy that while it is unknown if Mr. Prewett truly made any statement indicating he should apologize to Plaintiff, he has never done so.

33. After Mr. Barrett made the statement above, he then reiterated that "we all know it [the Pennakem incident] was an accident".

34. Plaintiff then stated that he had filed a Charge of Discrimination with the EEOC, and he believed that if/when Mr. Prewett was made aware of that, he would want to fire Plaintiff.

35. Mr. Barrett did not disagree with this statement.

36. After that, Mr. Barrett continued to try to persuade Plaintiff to return to work.

37. Plaintiff expressed appreciation to Mr. Delashmet and Mr. Barrett for their understanding and their good intentions; however, Plaintiff stated that given Mr. Prewett's statements and harassment toward his (Plaintiff's) sexual orientation, Plaintiff did not feel safe continuing to work around Mr. Prewett.

38. On May 6, 2022, Plaintiff filed an EEOC Charge of Discrimination against AS, for discrimination against his sexual orientation and retaliation.

39. On September 19, 2022, in response to Plaintiff's Charge of Discrimination, AS submitted a Position Statement to the EEOC.

40. AS's Position Statement alleges that "Barnett [sic] informed Plaintiff that pursuant to company policy that the Safety Manager would come there to meet [Plaintiff] to do an Incident Report and take [Plaintiff] to get a drug test."

41. Plaintiff contends he was never asked to wait for a safety manager, nor was he ever asked to take a drug test.

42. Plaintiff contends that after the incident at Pennakem occurred, he remained at the location and filed an incident report with Pennakem personnel and assisted with filing a police report.

43. While he was still there, Plaintiff saw that AS personnel, including Mr. Delashment, had arrived.

44. AS's Position Statement alleges that "Stone became irritated. Stone did not wait for the Safety Manager as instructed and did not go take a drug test that day. Instead Stone walked off the job and did not return."

45. Plaintiff contends he was never "irritated" and he, in no way, walked off or abandoned the job.

46. Plaintiff contends that these allegations by AS are complete fabrication.

47. AS's Position Statement alleges that "Contrary to the allegations in the Charge, Prewett did not scream or curse at Stone or make any reference to Stone's sexual orientation. Prewett was not drinking alcohol. Neither Prewett nor Barnett were aware of Stone's sexual orientation…"

48. Plaintiff contends these allegations are categorically false.

49. While under the influence of alcohol, while on the phone with Plaintiff, Mr. Prewett loudly and aggressively threatened to strangle Plaintiff and repeatedly referred to him as a "worthless faggot", as described above.

50. In the phone call on April 4, 2022, Mr. Barrett agreed with Plaintiff that "[Mr. Prewett] knows he fucked up", "I [Mr. Barrett] know he made a mistake and he [Mr. Prewett] knows he made a mistake", "I [Mr. Barrett] know he [Mr. Prewett] shouldn't have done it and he [Mr. Prewett] knows he shouldn't have done it". Mr. Barrett also stated, "You [Mr. Stone] won't be threated anymore, I can promise you that."

51. As to Mr. Barrett and Mr. Delashmet's awareness of Plaintiff's sexual orientation, Plaintiff and his boyfriend, Jacob Jones, have previously spent time outside of work, clearly behaving as a couple, with Mr. Barrett and Mr. Delashmet.

52. Plaintiff contends his sexual orientation was well known at AS.

53. Finally, AS's Position Statement alleges that "Stone was not terminated."

54. Plaintiff contends this allegation is false.

55. Plaintiff contends that when Mr. Prewett screamed, "If you ever set foot in this office again, I will strangle you to death, you worthless faggot!", Mr. Stone very reasonably interpreted this statement as a termination.

56. Moreover, as any reasonable person would agree given the circumstances, Plaintiff felt no amount of reassurance from Mr. Barrett and Mr. Delashmet that his (Plaintiff's) physical safety or protection from further discrimination and harassment could be assured if he agreed to being reinstated.

## CAUSES OF ACTION

### COUNT I: VIOLATIONS OF TITLE VII – RETALIATION

57. Plaintiff re-alleges and incorporates all averments set forth in paragraphs 1 through 56 above as if fully incorporated herein.

58. Based upon the actions described in more detail above, Defendant has violated Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000(e) *et seq.*, as amended, by retaliating against the Plaintiff for making complaints regarding sexual harassment.

59. Plaintiff is entitled to protection for making complaints or charges of misconduct in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000(e) *et seq.*, as amended.

60. The acts of the Defendant constitute a willful intentional violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000(e) *et seq.*, as amended, and other federal laws, and entitle Plaintiff to recovery of damages, both pecuniary and punitive in nature.

### COUNT II: VIOLATIONS OF TITLE VII – SEXUAL DISCRIMINATION

61. Plaintiff re-alleges and incorporates all averments set forth in paragraphs 1 through 60 above as if fully incorporated herein.

62. Based upon the actions described in more detail above, Defendant has discriminated against Plaintiff because of his sex which constitutes a violation of the Title VII of the Civil Rights Act of 1964, as amended.

63. Plaintiff has suffered lost wages, benefits and other pecuniary losses as well as deep, humiliation, anxiety and emotional distress.

64. The unlawful actions of Defendant complained of above were intentional, malicious, and taken in reckless disregard of the statutory rights of Plaintiff.

## **PRAYER FOR RELIEF**

**WHEREFORE PREMISES CONSIDERED,** Plaintiff respectfully prays that upon hearing of this matter by a jury, the Plaintiff be granted the following relief in an amount to be determined by the jury:

1. Back wages and reinstatement; or
2. Future wages in lieu of reinstatement;
3. Tax gross-up and all make-whole relief;
4. Compensatory damages;
5. Punitive damages;
6. Lost Benefits;
7. Pre-judgment and post-judgment interest;
8. Attorney fees and costs; and
9. Such other relief as the Court deems just and appropriate.

THIS the 9th day of January 2023.

Respectfully submitted,

JEREMY STONE, Plaintiff

By: /s/ Louis H. Watson, Jr.
    Louis H. Watson, Jr. (MB# 9053)
    Nick Norris (MB# 101574)
    Attorneys for Plaintiff

OF COUNSEL:

WATSON & NORRIS, PLLC
4209 Lakeland Drive # 365
Flowood, MS 39232-9212
Telephone: (601) 968-0000
Facsimile: (601) 968-0010
Email: louis@watsonnorris.com
Email: nick@watsonnorris.com
Web:  www.watsonnorris.com